PATTERSON et al. v. DICKINSON.

(Circuit Court of Appeals, Ninth Circuit. February 5, 1912.)

No. 2,010.

1. WILLS (§ 434*)—FOREIGN WILLS—PROBATE—EFFECT.

Under Code Civ. Proc. Cal. §§ 1322–1324, relating to probate of foreign wills, and providing that, if on the hearing it appears on the face of the record that the will has been proved and admitted to probate in any other of the United States, etc., it must be admitted to probate with the same force and effect as a will first admitted in California, on the production of a certified copy of a will duly admitted to probate in Missouri, and an application for probate thereof in California, the only

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

questions open to contest are the sufficiency of the proofs of the original probate and the question of the residence of the testator; the court of ancillary jurisdiction having no power to pass on any question touching the validity of the instrument.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 937-945; Dec. Dig. § 434.*]

2. TRUSTS (§ 95*)—CONSTRUCTIVE TRUSTEE—FRAUD—PROBATE OF WILL.

Defendant's wife died in Missouri, leaving property in California. Defendant produced an alleged will, which he procured to be admitted to probate in Missouri; whereupon complainants, who were the wife's heirs at law, instituted proceedings in Missouri to set the will aside, and during the pendency thereof defendant went to California and procured probate of a certified copy of the will in the California courts, without disclosing the pendency of the Missouri suit to set aside the will, and without informing complainants of his intention, and there succeeded in securing probate of the will and obtaining possession through a California decree of distribution of all of his wife's property in that state, after which the suit in Missouri resulted in a decree setting aside the will and determining that defendant's wife died intestate. *Held*, that complainants under such facts were entitled to maintain a plea to have defendant declared a constructive trustee of the property of the wife which he so secured.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145-147; Dec. Dig. § 95.*

Fraud or other wrong in acquisition of real property as creating constructive trust, see note to Cunningham v. Pettigrew, 94 C. C. A. 485.]

Appeal from the Circuit Court of the United States for the Southern Division of the Southern District of California.

Bill by John W. Patterson and others against Samuel S. Dickinson. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

In the bill, and the amendments thereto, which were filed by the appellants in the court below, the following facts are stated: That Rachael E. Dickinson, the sister of the appellants, died on October 23, 1905, intestate, leaving surviving her the appellants and the appellee, Samuel S. Dickinson, who was her husband, as her sole and only heirs at law, and that the husband inherited one-half of her estate and the appellants each one-tenth thereof; that at the time of her death Rachael Dickinson owned certain described tracts of land in Los Angeles county, state of California, and also certain moneys, credits, and personal property, of the value of approximately $20,000; that at the time of her decease she was a resident of Kansas City, in Jackson county, Mo.; that on or about November 18, 1905, the appellee filed in the probate court of that county and state a document purporting to be the last will and testament of said Rachael E. Dickinson, deceased, and on November 22, 1905, said alleged will was admitted to probate in that court, and the appellee qualified as executor thereunder; that on December 12, 1905, the appellants commenced an action in the circuit court of Jackson county, Mo., to contest the probate of said alleged will; that on December 18, 1905, the appellee, being informed and well aware of the pendency of that action, and knowing that said instrument was not the will of the testatrix, filed a certified copy of said instrument, together with a petition for letters testamentary, in the probate department of the superior court of the state of California for Los Angeles county; that upon proceedings had thereon, and upon producing a duly authenticated copy of the probate of said instrument in Jackson county, Mo., the instrument was, on January 4, 1906, admitted to probate in said superior court for Los Angeles county, Cal., and letters testamentary on that day were issued to the appellee. The bill alleges that the appellants were not informed of said proceedings in the state of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

California, and that the appellee concealed and withheld from them notice thereof, with the intent to defraud them; that the appellants did not learn that the property of the decedent was located in Los Angeles county, Cal., until January 6, 1906, several days after said will had been admitted to probate in that county; that, with the same fraudulent purpose to deprive the appellants of their share of the property of said decedent, the appellee withheld information from the superior court of the state of California for Los Angeles county that a contest of the probate of said will in the state of Missouri had been begun by the appellants, and did not inform that court that the will was invalid, and that the decedent had died intestate, although he well knew those facts; that on November 7, 1906, the appellee filed his final account, and petition for a decree of final distribution, in said proceedings in California, and on January 4, 1907, said superior court of that state made its order settling the final account and directing distribution; that by said order all the lands belonging to decedent in said state were awarded to the appellee in accordance with the terms of said pretended will, and also $20,729.92 cash, the same being all of the property of the decedent, except about $3,000, the amount of certain legacies; that on December 17, 1907, judgment was entered in the proceedings in the circuit court of Jackson county, Mo., adjudging that Rachael E. Dickinson had died intestate, and that the instrument which had been admitted to probate as her will˙ was void and of no effect, having been expressly revoked by an instrument in writing signed by the decedent and properly witnessed; that the appellee fraudulently concealed from the appellants all notice of the probate proceedings in California, and that they had no actual notice or knowledge thereof, nor of the nature of the proposed decree settling the final account and distributing the estate, until after the same had been made, entered, and filed. The prayer was that the appellee be adjudged to be an involuntary trustee for the benefit of the appellants, and to be required to account for the rents and profits of the land received by him, and that he account for all sums of money received from the sales of land made by him and otherwise, and that the appellants be adjudged to be entitled to receive each one-tenth of all the property so received or administered by the appellee in the state of California.

To the bill a demurrer was filed for want of equity; it being specified in the demurrer that it did not appear from the bill that the appellants did not have actual or constructive notice of the order of the superior court of Los Angeles county admitting the will to probate within six months after the will was so admitted, or that they could not by the exercise of reasonable diligence have discovered or had knowledge or notice thereof, and that it did not appear from the bill that they did not have notice of the final distribution within six months after the date thereof, or that they could not by the exercise of reasonable diligence have discovered or had knowledge or notice thereof. The demurrer was sustained, and on the election of the appellants to amend no further a decree was entered dismissing the bill.

The statutes of California applicable to the probate of foreign wills are as follows:

Section 1322 of the Code of Civil Procedure provides: "Wills Approved in Other States to be Recorded When and Where.—All wills duly proved and allowed in any other of the United States or in any foreign country or state, may be allowed and recorded in the superior court of any county in which the testator shall ·have left any estate."

Section 1323: "Proceedings on the Production of a Foreign Will.—When a copy of the will and the probate thereof, duly authenticated, shall be produced by the executor, or by any other person interested in the will, with a petition for letters, the same must be filed and the court or judge must appoint a time for the hearing; notice whereof must be given as hereinbefore provided for an original petition for the probate of a will."

Section 1324: "Hearing Proofs of Probate of Foreign Will.—If, on the hearing it appears upon the face of the record that the will has been proved, allowed   and admitted to probate in any other of the United States, or in any foreign country, and that it was executed according to the law of the place in which

the same was made, or in which the testator was at the time domiciled, or in conformity with the laws of this state, it must be admitted to probate and have the same force and effect as a will first admitted to probate in this state, and letters testamentary or of administration issued thereon."

Henry C. Schaertzer and Gray, Barker, Bowen, Allen, Van Dyke & Jutten, for appellants.

H. T. Morrow, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The bill in this case presents an anomalous state of facts. On October 23, 1905, a woman, a resident of Missouri, died, leaving surviving her husband and certain brothers and sisters. On November 18, 1905, the husband presented for probate in the appropriate probate court of that state a document purporting to be the last will and testament of the decedent, by the terms of which nearly all the property was devised and bequeathed to him. Four days later that instrument was admitted to probate and the husband qualified as the executor thereof. On December 12, 1905, the decedent's brothers and sisters commenced an action to contest the probate, and on December 17, 1907, it was adjudged in that proceeding that the decedent had died intestate and that the instrument which had been admitted to probate as her will had been revoked. In the meantime the husband went to California, where certain of the property, real and personal, of the decedent was situated, and on December 18, 1905, six days after the commencement of the contest in the Missouri court, he presented to a probate court of California a certified copy of the instrument, and a certified copy of the probate proceedings in the Missouri court. Thereupon the will was admitted to probate in the California court, and letters testamentary issued from that court to him, and thereafter the estate, consisting of personal and real property, was administered by him, the greater portion of which he received as devisee and legatee, and his final account as executor was approved, all of which was done in the interval between the commencement and the conclusion of the contest proceedings in the Missouri court.

[1] The question is: Could the brothers and sisters of the decedent, who under the law of Missouri had inherited one-half of her estate, maintain a bill in equity in the court below to secure their rights in the estate, and to obtain an accounting and a decree declaring that the husband of the decedent holds one-half of the property in trust for them? The question gives rise to the inquiry: What is the relation of the ancillary administration to the domiciliary administration of an estate? In Missouri, the state of decedent's domicile, the instrument was admitted to probate. The probate was obtained upon the testimony of witnesses there taken in open court and upon the petition of the executor named in the instrument. Upon the strength of that proceeding, and upon the record of what was done in that court in the first instance, and without knowledge of the subsequent proceedings therein, the probate court in California admitted the will to probate as a matter of course. Its judgment was based upon the judg-

ment of the Missouri court, and upon that foundation rested all the fabric of its proceedings. In Re Gilleran, 50 Hun, 399, 3 N. Y. Supp. 145, the Supreme Court of New York went so far as to hold that, upon the revocation of letters testamentary by the court of the decedent's domicile, ancillary letters testamentary were ipso facto recalled. The court said:

"Deprived of the support of the original letters, the ancillary letters fell without an order for their annihilation, and the only effect of the action of the surrogate of Richmond county for the revocation of such letters will be to disincumber the records in his office. They are already canceled and destroyed by operation of law, and exist only in name upon the records of the surrogate."

This was held, not in a case where the will was set aside in the court of original jurisdiction, but in a case where, for cause shown, the letters testamentary were recalled in that court. The conclusion reached by the court in that case may perhaps be open to question; but certainly there can be no doubt that where a will, after being admitted to probate, is set aside in the court where the testator had his domicile, and that court declared that the decedent died intestate, proceedings to administer the property in accordance with the will in an ancillary administration, under statutes such as those of California, which are similar to the statutes of the majority of the states, are thereby so far affected that they afford no protection to the executor who has obtained the possession of the decedent's property by means thereof. In Re Clarke's Estate, 148 Cal. 108, 82 Pac. 760, 1 L. R. A. (N. S.) 996, 113 Am. St. Rep. 197, it was held that on an application for the probate of a foreign will the sufficiency of the proofs of foreign probate and the question of the residence of the testator are the only questions open to contest. Said the court:

"In summing up, we think the unhampered jurist would reach the conclusion that our laws not only recognize, but sedulously preserve, the distinction between foreign and domestic wills and the probate thereof; * * * that all foreign wills may be proved and allowed as provided in section 1322 of the Code of Civil Procedure, et seq.; that in the case of a domestic will all questions touching the validity of the instrument are and should be primarily and exclusively cognizable by the courts of the state of the domicile, but in the case of a foreign will—that is to say, of one not a resident of this state—this state and its citizens have less concern in these questions of fraud, undue influence, and the like, and upon the offer of proof of such a will it shall be admitted upon the evidence prescribed by section 1324 without right of contest of such matter."

The same view was taken of the effect of a similar statute in State v. District Court, 34 Mont. 96, 85 Pac. 866, 6 L. R. A. (N. S.) 617, 115 Am. St. Rep. 510, in which it was held that a will admitted to probate in California, and subsequently admitted to probate in the state of Montana, for the reason that the testator had real estate there, could not subsequently be contested in the courts of Montana, on the ground that the testator lacked testamentary capacity. In Martin v. Stovall, 103 Tenn. 1, 52 S. W. 296, 48 L. R. A. 130, the Supreme Court of Tennessee, under a statute similar to that of California, held that a will probated in common form in Mississippi, the place of the testator's domicile, and afterwards certified and admitted to probate

in Tennessee, was not subject to contest in the latter state. In Racke-mann v. Taylor, 204 Mass. 394, 90 N. E. 552, the court said:

"If he has property in another state or country, it may be necessary to prove the will or to take out administration there, either for the purpose of obtaining and collecting the property, or for the security of local creditors or the protection of rights of the state to receive taxes, or of residents of the state who ought to get what they are entitled to receive from the estate, without being obliged to follow the property into another jurisdiction. But such probate of a will or such administration of an intestate estate is always merely ancillary. It is not for the purpose of establishing rights of succession, whether under a will or otherwise. Those are to be established in the courts of the state or country where the deceased person had his domicile. The strictly ancillary character of such proceedings has been recognized by many decisions of the courts of our own state, as well as of courts elsewhere."

In Davis v. Upson, 230 Ill. 327, 82 N. E. 824, it was said:

"If the decision of the court of the domicile of a deceased person does not control in the matter, whether the deceased died testate or intestate, there must necessarily result a multitude of decisions upon that question; and if a devisee may carry a will from state to state, and present it for probate in each state where the decedent had a debt due him at the time of his death, and until he can find a state under the laws of which it can be admitted to probate, great confusion in the settlement of estates would follow."

The case differs essentially from Tracy v. Muir, 151 Cal. 365, 90 Pac. 832, 121 Am. St. Rep. 117, the Broderick Will Case, 21 Wall. 503, 22 L. Ed. 599, and other similar cases cited on behalf of the appellee, holding that the determination of the question of the genuineness of an instrument purporting to be a will is solely and exclusively for the court to which proof of wills is presented, and that its decision therein is final and conclusive, and not subject, except upon appeal to a higher court, to be questioned in any other court, or to be set aside or vacated by a court of chancery.

[2] The superior court of Los Angeles county was not vested with jurisdiction primarily to decide whether the instrument which had been admitted to probate in Missouri as the will of Rachael E. Dickinson was what it purported to be. The determination of that question belonged exclusively to the probate court of the decedent's domicile. That court having finally adjudicated the question, and having decreed that the instrument was not the last will and testament of the decedent, and that she died intestate, its judgment must be held to be final and conclusive upon any ancillary administration. The will having been set aside by the only court which had jurisdiction to set it aside, the judgment so rendered is by law conclusive of the right of the distributee under the proceedings of the court of ancillary administration to retain the property obtained by virtue thereof. We may concede that upon the allegations of the bill in this case the court below had no authority to set aside the decrees of the superior court of Los Angeles county in admitting the will to probate and distributing the estate, and such is not the object of the bill. It is to declare the appellee a trustee of the property which he has inequitably obtained, and its jurisdiction to do so rests upon principles as old as equity itself.

If the allegations of the bill are true, the appellee, who, as proponent of the will in the probate court in Missouri, was necessarily a party to the contest which was instituted almost immediately upon the admission of the will to probate, caused that instrument to be admitted to probate in California upon the record of the probate in Missouri, and fraudulently withheld from the California court knowledge of the fact that the will was under contest in the domiciliary court of probate, and thereafter frauduently administered the estate in California, a greater portion of which he received as the beneficiary of the will, all during the pendency of the contest in the Missouri court, and before the judgment of that court was rendered. In Pomeroy's Eq. Jur. § 155, the author says:

"If one party obtains the legal title to property, not only by 'fraud or by violation of confidence' or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

In Pomeroy's Eq. Jur. § 919, it is said:

"Where a probate is obtained by fraud, equity may declare the executor or the other person deriving title under it a trustee for the party defrauded" —citing Barnesly v. Powel, 1 Ves. Sr. 284; McCormick v. Grogan, L. R. 4 H. L. 82; Allen v. McPherson, 1 H. L. Cas. 191; Kennell v. Abbott, 4 Ves. 802; Charlton v. Coombes, 4 Giff. 382; Wilkinson v. Joughin, L. R. 2 Eq. 319; Podmore v. Gunning, 7 Sim. 644.

In Estate of Walker (Cal.) 117 Pac. 511, Chief Justice Beatty in his concurring opinion said:

"But if it turns out that there was a will which was suppressed by an heir for the purpose of defrauding devisees or legatees, or, as in this case, lost and undiscovered until after distribution, the remedy of the devisee or legatee against the heir who has received what was his is in equity to charge the heir as his trustee, and to require him to account and to transfer what he has acquired through the fraud, accident, or mistake."

We think the present suit was commenced within a reasonable time after the discovery of the fraud. Meader v. Norton, 11 Wall. 442, 458, 20 L. Ed. 184.

The decree is reversed, and the cause is remanded, with instructions to overrule the demurrer and for further proceedings.